# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL T. KEISER,** | : | Civil No. 1:15-CV-450 |
| | : | |
| Plaintiff | : | (Magistrate Judge Carlson) |
| | : | |
| v. | : | |
| | : | |
| **THE BOROUGH OF CARLISLE,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM OPINION AND ORDER

### I. Factual and Procedural Background

This is a workplace age discrimination lawsuit brought by the plaintiff against a local municipality under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 ("ADEA"). The plaintiff in this action, Michael Keiser, worked for 27 years as the Director of Public Works for the Borough of Carlisle before he was fired on May 1, 2014, just hours after formally complaining to his supervisor about what he perceived as his supervisor's repeated ageist and discriminatory comments and criticism. Keiser alleges that his firing constituted unlawful age discrimination and was retaliatory.

The Borough, and Keiser's supervisor, Mathew H. Candland, Sr., maintain that Candland was compelled to terminate Keiser's employment because it had become impossible to work cooperatively with Keiser; because of fundamental

1

disagreements over significant public-works projects; and because morale had reached an unacceptable low within Keiser's department. Keiser retorts that these given reasons were pretextual cover for his unlawful firing.

With respect to these competing claims and defenses, we have previously concluded that this case is riddled with factual disputes that make summary judgment inappropriate. Accordingly, we have scheduled this case for trial in October 2017 and in anticipation of that trial the parties have filed an array of motions *in limine*, including three motions *in limine* filed by the plaintiff which collectively seek to exclude evidence of past workplace conflicts or employee discipline involving the plaintiff and a prior Borough Manager Stephen Hietsch. (Docs. 63, 65, and 67.)

With respect to these evidentiary issues, the pertinent facts can be simply stated: Stephen Hietsch served as the Borough Manager, and Keiser's supervisor, from 2008 until early 2012. During this time there were workplace conflicts and difficulties between the two men, difficulties which culminated at the end of Hietsch's tenure in 2012 with a proposed disciplinary citation against Keiser. That citation was mitigated, in part, through the Borough's grievance process shortly before Matthew Candland assumed the duties as Keiser's supervisor in the Spring of 2012. Ultimately it was Candland who later discharged Keiser in May 2014, a discharge which forms the basis for this employment discrimination claim. While

2

Candland has indicated that he refrained from learning the details of this prior disciplinary action when he first was hired as Borough Manager in the Spring of 2012, the defendants have pointedly noted that Candland has *not* testified that he did not review Keiser's employment history prior to deciding to terminate him in May 2014, and other witnesses have testified that Candland seemed familiar with these past workplace disputes at the time that the decision was made to fire Keiser in May 2014.

As to these motions *in limine* regarding Keiser's past workplace discipline, the parties' positions stand in stark contrast to one another. For his part, Keiser argues that this evidence is irrelevant, improper and highly prejudicial bad character evidence. The defendant, in turn, argues that this evidence would be relevant in several different ways. First, this evidence would have relevance to this lawsuit if Keiser's past history was known to Candland and relied upon by Candland in reaching a decision to terminate Keiser. Second, this evidence may have relevance if the plaintiff argues that the borough failed to follow progressive discipline in dealing with Keiser and invites the jury to conclude from the lack of progressive discipline that work justifications for Keiser's firing were pretextual. Finally, the defendant asserts that this evidence may have relevance if Keiser presents himself as an exemplary employee with an unblemished work history.

In our view, these competing claims reveal a basic truth: the admissibility of certain evidence is entirely dependent upon the timing, context, and content of what is presented at trial. Thus, oftentimes informed assessments of relevance and unfair prejudice must await trial since "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990). Mindful of the fact that a weighing of this evidence cannot be done in the abstract, for the reasons set forth below, we will DENY these motions *in limine*, (Docs. 63, 65, and 67.), without prejudice to renewal of these evidentiary issues at trial.

**II.    Discussion**

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to

4

"narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted).

However, courts exercise great caution before indulging in pre-trial rulings excluding evidence. Parties frequently invite courts to make pre-trial rulings on issues of prejudice, relevance and admissibility through motions *in limine*. The United States Court of Appeals for the Third Circuit has cautioned us, however, that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990); *see also Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage . . . ."). Moreover, the Third Circuit has characterized Rule 403, the rule permitting exclusion of evidence, as a "trial-oriented rule" and has warned that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." *In re Paoli R. Yard PCB Litig.*, 916 F.2d at 859. However, it is also well-settled that "[a] trial court is afforded substantial discretion when striking a . . . balance with respect to proffered evidence, and a trial judge's decision to admit or exclude evidence . . . may not be

reversed unless it is arbitrary and irrational." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

The issues raised by these three motions *in limine* aptly illustrate why courts should often refrain from ruling on these questions of relevance and prejudice in the abstract. At the outset, the legal principles which guide our analysis of these questions are broadly framed and are often fact-specific, requiring us to assess factual matters as they arise at trial. On this score, the Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.

Adopting this view of relevance it has been held that: "Under [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence.' [Therefore] 'It follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.' " *Frank v. County of Hudson,* 924 F. Supp. 620, 626 (D.N.J.1996) *citing Spain v. Gallegos,* 26 F.3d 439, 452 (3d Cir.1994) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." *United States v. Sriyuth,* 98 F.3d 739, 745 (3d Cir.1996) (citations omitted). These principles favoring inclusion of evidence are, however, subject to some reasonable limitations. One of the most significant of these limitations is embodied in Rule 403 of the Federal Rules of Evidence, which provides grounds for exclusion of some potentially irrelevant but highly prejudicial evidence, stating that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 .

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

This weighing of probative value and prejudicial impact frequently requires a development of a complete factual record, something which is not possible prior to trial. Thus, when matters of workplace misconduct go directly to a party's credibility, or cast light upon questions of bias or animus, that evidence has been permitted at trial in workplace discrimination litigation. *Waters v. Genesis Health Ventures, Inc.*, 400 F. Supp. 2d 808, 813 (E.D. Pa. 2005). Likewise, an employee's discipline history may have relevance if it forms the basis for a termination decision, or rebuts a party's claims regarding his own job performance. *Mikulan v. Allegheny Cty.,* No. CV 15-1007, 2017 WL 2374430, at *4 (W.D. Pa. May 31,

8

2017). However, in the absence of some such articulated theory of relevance, this evidence would not be generally admissible solely a proof of an employee's bad character. *See Zenian v. District of Columbia*, 283 F. Supp. 2d 26, 40 (D.D.C. 2003).

In this case, while we agree with the plaintiff that this evidence would not be broadly admissible simply as bad character evidence, we also recognize that these prior employment matters may have direct relevance in this case if Keiser places his own overall work performance at issue, if Keiser suggests that Carlisle Borough failed to pursue progressive discipline, or if Candland testifies that Keiser's past work history was known to him and formed part of the work-related justification for firing Keiser. In short, while all parties should strive to focus on the claims raised in this case relating to Keiser's May 2014 termination, it simply is not possible at this time to determine in the abstract the extent to which Keiser's past workplace discipline and related matters may assume relevance in this trial of this case. Moreover, before any such evidence could be introduced there would have to be a threshold showing that the evidence was both relevant and competent; that is, the evidence would have to be presented by a competent witness and could not consist solely of inadmissible hearsay.

All of these determinations involve an informed assessment of the evidence as it develops at trial, and in our view none of these determinations can be made in

9

the abstract prior to trial. Therefore, mindful of the fact that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted [and] [e]xcluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage," *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990), we will deny these motions *in limine*, and defer these evidentiary determinations until trial.

An appropriate order follows.

**III.    Order**

For the foregoing reasons, IT IS ORDERED that the plaintiff's motions *in limine*, (Docs. 63, 65, and 67.), are DENIED without prejudice to renewal of these evidentiary issues at trial.

So ordered this 13th day of September 2017.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge