# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL T. KEISER,** | : | Civil No. 1:15-CV-450 |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| v. | : | |
| **THE BOROUGH OF CARLISLE,** | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION AND ORDER

### I.  Factual and Procedural Background

This is a workplace age discrimination lawsuit brought by the plaintiff against a local municipality under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 ("ADEA").  The plaintiff in this action, Michael Keiser, worked for 27 years as the Director of Public Works for the Borough of Carlisle before he was fired on May 1, 2014, just hours after formally complaining to his supervisor about what he perceived as his supervisor's repeated ageist and discriminatory comments and criticism.  Keiser alleges that his firing constituted unlawful age discrimination and was retaliatory.

The Borough, and Keiser's supervisor, Mathew H. Candland, Sr., maintain that Candland was compelled to terminate Keiser's employment because it had become impossible to work cooperatively with Keiser; because of fundamental

disagreements over significant public-works projects; and because morale had reached an unacceptable low within Keiser's department. Keiser retorts that these given reasons were pretextual cover for his unlawful firing.

We have previously concluded that this case is riddled with factual disputes that make summary judgment inappropriate. Accordingly, we have scheduled this case for trial in October 2017 and in anticipation of that trial the parties have filed an array of motions *in limine*, including a motion *in limine* filed by the plaintiff which seeks to exclude any testimony by Mark Malarich, a witness who was disclosed to the plaintiffs on May 22, 2017. (Doc. 69.)

With respect to this motion *in limine*, the pertinent facts can be simply stated: Following Keiser's termination in May of 2014, Mark Malarich was hired as the Carlisle Borough Public Works Director in November of 2014, and remains employed in this capacity. At the time that he was hired Malarich, who was born in 1959 was more than five years younger than the plaintiff, but was older than Candland and was substantially closer in age to Keiser.

In their response to this motion *in limine* the defendant has acknowledged that the defense first designated Malarich as a potential witness some five months ago, on May 22, 2017, and has indicated that the proposed testimony of Malarich would be limited to the fact of his hiring, his age, date of hire, and position, as well as the statements allegedly made by Keiser to Malarich on May 5, 2017, relating to

Candland, Keiser's employment with the Borough, his future employment plans and something called the Valley Meadows project. The Valley Meadows Storm Water project was a flashpoint between Keiser and Candland, and their disputes regarding this project were a crucial point of conflict in their workplace relationship. Thus, much of what was contested between Candland and Keiser during the time when they worked together related to the Valley Meadow project.

As we understand it, if he was called as a witness and testified, Malarich would recount that on May 5, 2017, as part of his duties he traveled to Valley Meadows following a heavy rainfall to observe run-off at that site. When he drove to Valley Meadows Malarich encountered Keiser also watching the run-off. Keiser approached Malarich and informed Malarich of his disgust over the Borough undertaking the Valley Meadows Improvement project, stating that it was an unnecessary project that performed no better than the project he had completed while Public Works Director. Keiser further expressed his displeasure with the current Borough Manager and said that he would be running for Borough office once his lawsuit was resolved and would then take care of the problem.

Alerted to this May 5, 2017, contact between Malarich and Keiser, on May 22, 2017, the defendant submitted a supplemental Rule 26(s) disclosure statement which disclosed Malarich as a potential witness in this matter. This disclosure statement was submitted after the discovery deadline had passed in this case, but

Malarich's employment and his institutional role in this litigation as Keiser's successor had been known to all parties long prior to the submission of this supplemental disclosure form. Thus, the Joint Case Management Plan filed in this case on June 17, 2015, identified one of the facts in dispute as: "Plaintiff's replacement, Mark Malarich, an external candidate, was age 55 at the time of his hire in October 2014." (Dkt. Doc. 10, p. 5, at ¶1.2.23). In addition, Malarich's personnel file was produced on or about July 30, 2015, as part of Defendant's Initial Disclosures (Section B., para. 10) following receipt of an executed Stipulation of Confidentiality. Malarich was also identified in both written and deposition discovery. In written discovery responses dated December 31, 2015, the Borough stated that "Mark Malarich was hired as the Director of Public Works effective November 12, 2014, and remains employed in that capacity." (Defendant's Answer to Interrogatory No. 4, dated December 21, 2015). Malarich has also been the subject of some deposition testimony by other witnesses in the course of discovery. Moreover, Malarich was identified as Keiser's successor in the summary judgment litigation of this case, and the potential evidentiary relevance of his hiring was thoroughly aired by the parties at that time. Thus, some of the matters that the defendant has proffered it might present at trial through this witness; namely, the fact of his hiring, his age, date of hire, and position have been completely disclosed to all parties for several years.

What was not previously known was the content of Mr. Malarich's conversation with Mr. Keiser on May 5, 2017. However, to the extent that the defendant's May 22, 2017, Supplemental Rule 26 designation of Malarich as a potential witness was based upon this May 5, 2017, encounter between these two men, it cannot be said that the supplemental disclosure was untimely. Indeed, that May 2017 disclosure could not have been made prior to May 2017 since this conversation allegedly only occurred in May of 2017.

It is against this backdrop that Keiser has filed a motion *in limine* seeking to exclude Malarich as a witness. In his motion Keiser advances a single specific argument, contending that the belated disclosure of Malarich as a potential witness compels exclusion of this testimony under Rule 37 of the Federal Rules of Civil Procedure.[1] This motion is fully briefed by the parties and is, therefore, ripe for resolution.

For the reasons set forth below this motion will be DENIED.

**II.    Discussion**

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods.*

---

[1] The plaintiff's motion *in limine* does not otherwise argue the evidentiary relevance of any of this proffered testimony by Mr. Malarich, and we will reserve such objections for trial.

*Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted.) Further, it is also well-settled that "[a] trial court is afforded substantial discretion when striking a . . . balance with respect to proffered evidence, and a trial judge's decision to admit or exclude evidence . . . may not be reversed unless it is arbitrary and irrational." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

One basis for the exclusion of evidence at trial may relate to a party's failure to timely comply with discovery disclosure requirements. *See Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 4169197, at *1 (M.D. Pa. Feb. 17, 2016). Where there has been a late disclosure of witnesses, or exhibits, the legal standards which govern the exercise of our discretion are defined both by rule and case law. At the outset, Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information or identify a witness as required by Rule

6

26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or harmless*." Fed. R. Civ. P. 37(c)(1)(emphasis added.). Rule 26(a), in turn, requires parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses . . ." Fed. R. Civ. P. 26(a)(1)(A).

These rules are, by their terms, mandatory, but excuse belated disclosures when the failure was substantially justified or harmless. *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) ("Rule 37 is written in mandatory terms, and is designed to provide a strong inducement for disclosure of Rule 26(a) material."); *see also Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996) ("The sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show that is violation of Rule 26(a) was either justified or harmless."). On this score "[t]he non-producing party shoulders the burden of proving substantial justification for its conduct or that the failure to produce was harmless." *Tolerico v. Home Depot,* 205 F.R.D. 169, 175 (M.D.Pa.2002). Therefore, the burden here rests with the defendant to provide good cause to excuse this failure to timely disclose information by showing either substantial justification for that non-disclosure or demonstrating that the non-

7

disclosure was harmless. While the Third Circuit has not directly addressed this "substantial justification" standard, *see Grider v. Keystone Health Plan Central, Inc.,* 580 F.3d 119, 140 n. 23 (3d Cir.2009), district courts in this circuit have defined "substantial justification" as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with this disclosure request." *Tolerico,* 205 F.R.D. at 175.

Where a party has not satisfied this burden of proving substantial justification or harmlessness, the Court is vested with discretion to exclude witnesses or exhibits that were never previously disclosed during pre-trial litigation pursuant to Rule 37(c)(1). *Klatch-Maynard,* 2011 WL 2006424, at *3. In determining whether evidence should be excluded for a party's alleged failure to comply with its discovery obligations, courts are enjoined to consider the following factors: (1) the prejudice or surprise of the party against whom the evidence would be used; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against allowing the use of undisclosed evidence would disrupt the orderly and efficient trial of the case; and (4) bad faith or willfulness in failing to comply with the court's orders. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), overruled on other grounds, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir.1985). The

Court should also consider the importance of the excluded testimony. *Konstantopoulous v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

Guided by these legal benchmarks, we conclude that wholesale exclusion of Malarich as a witness is not warranted here under Rule 37 because, given the nature of the defense proffer, any delay in disclosing Malarich's identity as a potential witness or the substance of his testimony is either harmless or substantially justified. In this case the defendant has proffered that the proposed testimony of Malarich would be limited to two essential matters: (1) the fact of his hiring, his age, date of hire, and position, as well as (2) the statements made by the plaintiff to Malarich on May 5, 2017, concerning the Valley Meadows project and other related issues at the borough.

Turning to the first category of proffered testimony—the fact of Malarich's hiring, his age, date of hire, and position—we find that any delay in identifying Malarich as a potential witness to these matters is harmless since these facts have been fully disclosed to all parties for several years, are largely undisputed, and there is no unfair surprise that arises from permitting Malarich to testify to these undisputed facts.

As for the second category of proffered testimony—the substance of Malarich's May 5, 2017 conversation with Mr. Keiser—we find that the defendant

is substantially justified in the timing of the disclosure of Malarich's witness status based upon this episode in May of 2017. Indeed, we are constrained to note that the defense could not have made this disclosure prior to May 2017, since this conversation did not occur until May 5, 2017. Thus, the disclosure that Malarich might be a witness based upon this alleged communication with Keiser, which was made 17 days after the conversation occurred and five months prior to trial, was justified and timely. We also note that the failure to list Malarich on prior disclosures in 2015 also seems reasonable and substantially justified. At the inception of this case, it was not unreasonable for the defendant to conclude that Malarich, who was hired to fill Keiser's vacant position six months after Keiser left that position, would not be a relevant witness in this wrongful termination lawsuit.

Finally, when we consider the factors which govern exclusion of evidence due to late disclosure of witness identities, we note that a dispassionate assessment of these factors weighs against excluding Malarich as a trial witness. Thus, when we consider the first of these factors—the prejudice or surprise of the party against whom the evidence would be used—we note that there is little unfair surprise that would arise here since Malarich's status as Keiser's successor has long been known by all, Malarich's age is a well-known and immutable fact, and Malarich's most recent contacts with the plaintiff were promptly disclosed in May 2017 near

the time when they occurred. Second, with respect to the ability of the plaintiff party to cure any potential prejudice, the only prejudice cited by the plaintiff is the inability to depose Malarich, a form of prejudice which could be cured by the court prior to trial on a proper applicable by Keiser's counsel to depose this witness. Third, in the circumstances of this case, when this disclosure was made in May and the trial is set to commence five months later in October, allowing the use of this previously undisclosed evidence would result in little or no disruption of the orderly and efficient trial of the case. Finally, we conclude that there is no indication of bad faith or willfulness on the part of the defendant with respect to the timing of this disclosure.

Finding that all of the factors that govern our discretion in this field caution against the exclusion of this evidence, the plaintiff's motion *in limine* to exclude the testimony of Mark Malarich, (Doc. 69.), is DENIED.

An appropriate order follows.

### III. Order

For the foregoing reasons, IT IS ORDERED that the plaintiff's motion *in limine* to exclude the testimony of Mark Malarich, (Doc. 69.), is DENIED .

So ordered this 13th day of September 2017.

/s/ **_Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge