## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL T. KEISER,** | : | **Civil No. 1:15-CV-450** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **THE BOROUGH OF CARLISLE,** | ; | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION AND ORDER

## I.      INTRODUCTION

This is an employment discrimination action brought by Michael T. Keiser against his former employer, The Borough of Carlisle. Keiser has alleged that his long-term employment as the Director of the Public Works Department with the Borough was unlawfully terminated due to age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (ADEA). Keiser specifically has charged that his supervisor, Matthew Candland, the Borough Supervisor, harbored discriminatory animus towards older employees, and sought to replace them with younger workers solely on the basis of age. The Borough disputes Keiser's allegations, and trial in this dispute is scheduled to commence on October 10, 2017.

In advance of trial, the parties have filed an array of motions *in limine* seeking to limit specific areas of potential witness testimony in this case. Now pending before the Court are two of these motions, which the Borough has filed seeking to exclude witnesses from testifying about rumors that they claim to have heard regarding Candland's alleged discriminatory views. (Docs. 73, 75.)

In the first motion, the Borough seeks to preclude witnesses from testifying about rumors in the Public Works Department that Candland desired turnover of Borough employees or to eliminate older workers, as several witnesses testified to vaguely in their depositions. The Borough has argued that this evidence must be excluded because the witnesses lack personal knowledge regarding the alleged statements, and because the potential testimony would constitute inadmissible hearsay.

Upon consideration, the Court agrees that the proposed testimony constitutes hearsay – and sometimes double hearsay. Further, it has not been shown that these statements are subject to any applicable exception to the hearsay rules set forth in the Federal Rules of Evidence. Although the plaintiff has attempted to argue that some of the potential testimony should be allowed in to show the effect of the alleged hearsay upon each of the witnesses, the Court finds this argument unpersuasive, since it appears plain that the testimony would be offered to prove

the truth of the subject of the rumors. Moreover, the effect of the alleged rumors on the non-party witnesses is irrelevant, prejudicial and potentially confusing.

In the Borough's second motion, which is closely related to the first, it seeks to prevent similar hearsay testimony that is claimed to have originated with Borough officials – all of whom have, in fact, specifically denied that they were the source of the rumor or otherwise that they shared it with others. The Borough argues that this testimony is also plainly hearsay and not subject to any recognized exception. The plaintiff argues, unpersuasively, that this evidence should be deemed a party admission and, therefore, non-hearsay pursuant to Rule 801(d)(2), but on the current, incomplete factual record we disagree. Even if the witnesses had heard the rumors from the Borough officials, which is certainly disputed, we would still be constrained to find that the testimony constitutes inadmissible hearsay because, at bottom, the alleged statement is still no more than a rumor or something heard from a non-testifying declarant. The fact that a witness intends to say that he heard about a rumor from a Borough official does not mean that the underlying rumor becomes admissible, as the testimony would still amount to double hearsay. We further disagree that extrinsic evidence of these alleged statements—which have been denied by the declarants--should be permitted in order to impeach the anticipated testimony of other Borough employees.

## II. DISCUSSION

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. See Luce v. United States, 469 U.S. 38, 41 n.4 (1984); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

In considering motions *in limine* which call upon the Court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, we begin by recognizing that these "evidentiary rulings [on motions *in limine* ] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion ... Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.' " Abrams v. Lightolier Inc., 50 F.3d 1204, 1213 (3d Cir.1995) (citations omitted); *see*

Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir.1994) (reviewing *in limine* rulings for abuse of discretion).  Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court, and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy which shapes the rules of evidence.  The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth.  The inclusionary quality of the rules, and their permissive attitude towards the admission of evidence, is embodied in three cardinal concepts.  The first of these concepts is Rule 401's definition of relevant evidence.  Rule 401 defines what is relevant in an expansive fashion, stating:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable *197 or less probable than it would be without the evidence.

Fed. R. Evid. 401.

Adopting this broad view of relevance it has been held that:  "Under [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' [Therefore] 'It follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.' " _Frank v. County of Hudson_, 924 F. Supp. 620, 626 (D.N.J.1996) _citing Spain v. Gallegos_, 26 F.3d 439, 452 (3d Cir.1994) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence, favoring the admission of potentially probative proof in all of its forms, is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." _United States v. Sriyuth_, 98 F.3d 739, 745 (3d Cir.1996) (citations omitted). While these principles favoring inclusion of evidence are subject to some reasonable limitations, even those limitations are cast in terms that clearly favor admission of relevant evidence

over preclusion of proof in federal proceedings. Thus, Rule 403, which provides grounds for exclusion of some evidence, describes these grounds for exclusion as an exception to the general rule favoring admission of relevant evidence, stating that:

> Although relevant, evidence may be excluded if its probative value **is substantially outweighed** by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 (emphasis added).

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding, unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

Notwithstanding the Rules' inclusive character, other rules serve to place limits on the testimony that may be offered at trial to help ensure the reliability of the evidence that a party seeks to present. Rule 602 of the Federal Rules of Evidence provides that a fact witness "may testify to a matter only if evidence is

introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. In addition, Rule 802 provides that hearsay evidence is inadmissible unless otherwise permitted by statute or other rules of evidence. Fed. R. Evid. 802. Rule 801 defines hearsay as a statement by a declarant who does not testify at trial which is offered in evidence to prove the truth of the matter asserted in the statement. Fed. R. 801(c).

In the motions before the Court, the defendant seeks a pretrial ruling precluding witness testimony regarding rumors about Matthew Candland's alleged pattern of eliminating the employment of older workers and replacing them with younger workers both in Carlisle and in his previous employment in Sykesville, Maryland. Although the Borough does not seek to preclude any testimony from witnesses who claim to have heard firsthand Candland make ageist or discriminatory comments, the Borough does seek to prevent witnesses from testifying at trial that they had heard about rumors of such comments being made, or that they heard about such alleged comments from individuals other than Candland – particularly where all of those other individuals have either denied that they heard Candland make any such statements or that they shared them with others. In making this argument, the Borough argues that the witnesses should be prevented from offering this rumor testimony both because the witnesses have no personal knowledge regarding Candland making the alleged comments, and

because the rumors themselves constitute double hearsay – first, by testifying about the fact of rumor in general, and second in testifying about its content – in order to prove that Candland was biased against older workers.

The Borough has submitted portions of depositions testimony given by a number of witnesses regarding rumors that circulated within the Public Works Department that Candland desired turnover of older Borough employees and sought to have them replaced with younger hires. In all cases cited by the Borough, however, no witness was able to provide a sufficient foundation for the introduction of this testimony.

For example, Theodore Weber, a Borough employee since 2011, testified during his deposition about rumors that Candland was interested in achieving employee turnover every seven years and toward that end was aiming to replace older workers. His testimony is candid that it is based entirely on a rumor that even he could not trace:

> Q:     I am asking about your age. Why did you tell Don Reisinger that you were worried that you might be fired because of your age?
>
> A:     I heard that there was rumors that within seven years, they were going to try to get rid of older people.
>
> Q:     Who did you hear that from?
>
> A:     I'm trying to think of who it was.

Q:   Was it from one person or more than one person?

A:   I can't remember.

(Doc. 74, Ex. A, at 45-46.)

When pressed, Weber testified further regarding the hazy nature of his recollection and that the fact that his testimony or impression was informed entirely by a rumor with unknown origin that was being spread by employees within his department:

Q:   And the rumors that you were hearing that the Borough wanted to get rid of older workers, was it the Borough in general, or was it Matt Candland in specific?

A:   I think it was Matt.

Q:   Matt specifically wanted to get rid of older workers?

A:   That's what I thought I heard.  That's what the rumor was.  I don't know who started it.  I don't know.

Q:   Did this come from Public Works employees who were employed by the Borough or other folks?

A:   Public Works.

Q:   Did you hear those sorts of rumors from any employee who was employed in Parks and Recreation?

A:   No.

(Id. at 48-49.)

Similarly, Brian Richardson, who worked in the Public Works Department from 1998 until 2014 testified about rumors that he claims to have been aware of:

> Q:    The scuttlebutt about Sykesville and an alleged comment about turnover in a six to seven year time period, who did that come from?
>
> A:    I don't recall.   It may have come from Mr. Candland himself, but I don't know.
>
> ***
>
> Q:    So who did you hear it from in the first place?
>
> A:    I don't recall.

(Doc. 74, Ex. B, at 93.)

Another witness, Don Reisinger, who had been re-employed in the Public Works Department from 2009 until July 2015 offered similar rumor-based testimony:

> Q:    And what were you hearing?
>
> A:    That Matt really believed in turnover, employees not having a long period of time with one occupation. He thought that was – he bragged about the fact that where he came from the turnover rate was like seven years.  Again, these are things I was told directly or heard directly in crew leader meetings.

\*\*\*

Q:     Did you ever hear Matt Candland actually say words to that effect, that he wanted to have younger employees in there that he could groom his way?

A:     I don't know that he said it that way.

(Doc. 74, Ex. D, at 25-26.)

Q:     Did you ever hear Matt Candland use the term new blood in referring to his desire –

A:     Me personally?

Q:     Yeah.

A:     No.

Q:     But other people told you that they heard him say that.  Is that right?

A:     It was part of the conversation.

(Id. at 30.)

Q:     This question is intended to I guess distinguish between what might be rumor or something you heard from someone versus what you may have heard yourself.

So who, if anyone, told you that Mr. Candland preferred younger workers relative to Public Works or in general?

A:     John Morris would mention it oftentimes.  I heard it from Rodney Garner.  I heard it from Doc Kronenberg.

I heard it from Linda Cecconello. She's a Council woman.

(Id. at 94.)

Q:  You mentioned yesterday, you at least made some reference to Sykesville and turnover there relative to their workforce. Do you recall that?

A:  Yes.

Q:  Okay. Who was it that talked about Sykesville or the turnover?

A:  I believe it was John Morris and it may have been Linda Cecconello may have mentioned something about that, too.

(Id. at 99.)

The Borough maintains that all of the foregoing testimony – to the extent it is based upon statements that the witnesses heard other individuals make about a rumor or something that they themselves heard Matthew Candland say – should be precluded at trial since none of these three witnesses claimed to have personal knowledge of the statements, and because the statements are plainly hearsay within hearsay. We agree.

As noted, Rule 602 requires that a witness have personal knowledge of a matter about which he or she is testifying. Fed. R. Evid. 602. Knowledge as required by Rule 602 includes "awareness of objects or events," comprised of (1)

sensory perception; (2) comprehension about what was perceived; (3) present recollection; and (4) the ability to testify about what was perceived. C. Wright and V. Gold, 27 Federal Practice and Procedure § 6023 (West 1990); <u>see also</u> <u>Lewis v. City of Philadelphia</u>, 2004 WL 2674515, at *2 (E.D. Pa. Nov. 19, 2004). The trial court has discretion to determine whether a witness has sufficient personal knowledge to testify about a particular matter. <u>United States v. Lake</u>, 150 F.3d 269, 273 (3d Cir. 1998).

With respect to the foregoing testimony offered by witnesses who claim to have been aware of a rumor or third-party statement, these discrete areas of the witnesses' testimony is not based upon personal knowledge, and the witnesses have acknowledged as much. At most these witnesses are claiming to have personal knowledge of a rumor, but about nothing more. Because the witnesses lack personal knowledge regarding this particular rumor testimony, we agree with the Borough that it is problematic and presumptively inadmissible.

Another significant problem with the testimony, moreover, is that it is plainly hearsay and, in fact, is really hearsay-within-hearsay. Each of these witnesses would be offering testimony that is, in the first instance, hearsay about the hearing of a rumor itself. The witnesses appear to have been unable to attribute the origin of the rumors themselves. Secondly, the specific subject matter of the rumor – that Candland preferred younger workers and sought to rid the department

of older employees – is a second layer of hearsay. The Rules of Evidence proscribe the introduction of such double hearsay testimony unless each part of the combined statements (i.e., each layer of hearsay) comes within an exception to the rule against hearsay. Fed. R. Evid. 805. In this case, the plaintiff has not demonstrated how either layer of the hearsay meets a recognized exception.

Rumor testimony that is not tied to a specific declarant, but is instead an alleged statement that circulated among employees as a kind of workplace gossip, should not be admitted. See Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1002-1003 (3d Cir. 1988) (district court erred by admitting a witness's statement that a company "wanted a younger person" where the statement constituted double hearsay of a rumor that "fail[ed] the conjoined requirements of Rules 801(d)(2)(D) and 805.").

It is true that with respect to Don Reisinger, some of his testimony purports to attribute a rumor to a named declarant, but the testimony is nonetheless hearsay. Reisinger would propose to testify to out-of-court statements that he attributes to other named individuals offered to prove the truth of the matter asserted, namely that there were rumors, and that the rumors were that Candland wanted to replace older workers with younger employees. But this does not obviate the problematic nature of the testimony since none of these employees claim to have heard Candland make these statements, which might cause them to be admissible as

against a party opponent. <u>See</u> Fed. R. Evid. 801(d)(2) (excluding from definition

of hearsay a statement made by a party opponent); <u>Abrams v. Lightolier Inc.</u>, 59

F.3d 1204, 1214 (3d Cir. 1995) (finding that district court's admission of testimony

by witnesses who heard a decision-maker's statements about getting "rid of the old

fogies" and similar comments was appropriate). In this case, the witnesses have

done no more than repeat something that was allegedly shared or conveyed by

another person, and not Candland – yet would attribute those statements to

Candland. This is classic double hearsay and is inadmissible.[1] <u>See</u> <u>Smith v. City</u>

<u>of Allentown</u>, 589 F.3d 684, 693-94 (3d Cir. 2009) (agreeing with the district

---

[1] This might be different with respect to Reisinger's testimony had the plaintiff been able to secure testimony from another individual who admitted to making the statements to Reisinger regarding what Candland told them. In that case, presumably the employee with whom Candland allegedly spoke could testify at trial about the statement. <u>See</u> <u>Abrams v. Lightolier Inc.</u>, 50 F.3d 1204, 1216 (3d Cir. 1995) ("We perceive no double hearsay problem because we do not think the supervisor's explanation, if offered through the testimony of the supervisor, would be subject to a hearsay exception."). But in this case, three of the witnesses whom Reisinger identified, somewhat equivocally, as specific declarants sharing what Candland allegedly told them have specifically denied making these statements to Reisinger. Another individual whom Reisinger suggested might have shared the statement with him was not identified as a witness and has not been deposed, and there is thus no basis to believe that he would corroborate Reisinger's account. As such, the Court is left with Reisinger proposing to testify about statements that Candland allegedly made to one or more individuals, all of whom deny that they conveyed the statements to Reisinger. Accordingly, we agree with the Borough that Reisinger cannot offer Candland's alleged statements and have them attributed to the Borough as a non-hearsay statement of a party opponent under Rule 801 (d)(2), and that his proposed testimony regarding rumors in the department is double hearsay that may not be attributed to the Borough. <u>See</u> <u>Smith</u>, 589 F.3d at 693-94; <u>Wayne</u>, 2016 WL 3345486, at *5 and n.3 (M.D. Pa. June 6, 2016).

court's ruling that an alleged statement by a party was inadmissible double hearsay where the plaintiff was simply repeating what another person told him, and where that person disavowed having made the statement); see also Wayne v. Kamionka Entertainment Group, No. 1:14-CV-1893, 2016 WL 3345486, at *5 (M.D. Pa. June 6, 2016).

The plaintiff argues that the proposed testimony should not be excluded because the testimony is not being offered to prove the truth of the matter asserted – Candland's alleged preference for younger workers and his bias against older employees – but would be used to show the effect that these alleged rumors had upon the witnesses themselves, which the plaintiff suggests should be allowed in order to buttress other direct evidence showing bias.[2]  We disagree that the plaintiff is proposing to offer the testimony for any reason other than to demonstrate the truth of the matter being asserted, and do not find that any alleged effect upon the hearer of the rumor causes testimony about that rumor to be admissible, and the plaintiff has offered no persuasive legal support for that assertion.  The Court also cannot perceive the relevance of any alleged effect that this information may have had upon non-party witnesses.

---

[2]  To the extent that the plaintiff or any other witness proposes to testify about something that Candland said to them, those statements are not subject to the Borough's motion and would not appear to be subject to any hearsay objection. The Borough has not sought to enjoin the plaintiff or other witnesses from offering direct testimony about statements that they heard Candland make.

With respect to Reisinger's testimony that he heard about Candland's statements through other Borough managers (all of whom deny telling Reisinger about any such statement), the plaintiff argues that he should nevertheless be able to have Reisinger testify about hearing age-related remarks attributed to Candland by either John Morris or Brian Richardson because these statements themselves should be considered party admissions under Rule 801(d)(2), and, therefore, non-hearsay. Alternatively, the plaintiff argues that Reisinger could offer testimony about these statements in order to impeach Morris or Richardson if they deny having told him about Candland's alleged statements.

With respect to these arguments, the Court does not find that the plaintiff has adequately shown that he should be permitted to elicit direct testimony from Reisinger about statements that Candland allegedly made, which Reisinger allegedly heard from other individuals who have denied conveying them to Reisinger. Reisinger maintains that John Morris and Brian Richardson were "management level employees" and, therefore, anything that Reisinger claims that they told him should be deemed to be admissions of the Borough pursuant to Rule 801(d)(2). (Doc. 83, at 7.) The plaintiff has proffered that at the time they allegedly spoke to Reisinger about Candland's alleged comments, Morris was a Field Operations Manager and that Richardson served as a Traffic Signal Operator. The plaintiff then argues, in conclusory fashion, that statements that these two

individuals allegedly made to Reisinger should be attributable to the Borough as a statement by a party opponent that is admissible pursuant to Rule 801(d)(2). The plaintiff then makes a substantially similar argument with respect to Candland, asserting that his alleged age-related statements purportedly made to Morris or Richardson are also attributable to the Borough, and, therefore, both statements should be deemed to be non-hearsay under the Rule, and deemed admissible pursuant to Rule 801(d)(2) and 805.

We do not find at this time that the plaintiff has demonstrated that any statement that these individuals may have made to Reisinger about something they heard from Candland would automatically be attributable to the Borough as a party admission simply because the plaintiff has called them management employees. Rule801(d)(2) does not automatically define such statements as non-hearsay. Instead, in order to be admissible the statements must fall within specific exceptions outlined in Rule 802(d)(2)(A)-(E). Currently, there is insufficient evidence from which the Court could reasonably make a judgment about whether these individuals are authorized to speak on behalf of the Borough about any subject, and in particular about something they may have heard from another Borough employee regarding his own management preferences, regardless of whether they may hold some other managerial role within the Borough's administrative hierarchy. Although the Rules embrace a degree of liberalism and

leniency with respect to party admissions made by agents, see, e.g., Marra v. Philadelphia Housing Authority, 497 F.3d 286, 297-98 (3d Cir. 2007) (discussing Rule 801(d)(2) and cases interpreting it), the plaintiff has not offered a compelling factual or legal basis upon which the Court could make such a conclusion at this time. Accordingly, the Court is not persuaded that Reisinger should be able to offer testimony about statements that other Borough employees told him, about things that Candland may have told them, regarding his managerial practices or bias against older workers. To the extent that the plaintiff wishes to have the Court revisit this evidentiary avenue at trial, he will need to do so outside the presence of the jury and be prepared to proffer a much more substantial factual and legal showing that would justify this form of direct testimony.

Relatedly, the plaintiff has suggested that he should be able to use Reisinger to impeach the anticipated testimony of Morris, Richardson and Weber, each of whom he expects will deny that that told Reisinger about comments they heard from Candland. The Court disagrees that the plaintiff should, as a matter of right, be permitted to offer Reisinger's testimony to impeach that of Morris, Richardson, or Weber if they deny having told Reisinger about things that Candland may have said. In fact, the law is decidedly to the contrary, and does not generally allow the use of extrinsic evidence to impeach a witness. As the court of appeals has aptly noted: "Under Rule 608(b), 'specific instances of the conduct of a witness, other

than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.' Fed.R.Evid. 608(b). 'Extrinsic evidence is evidence offered through other witnesses, rather than through cross-examination of the witness himself or herself. This Court has construed Rule 608(b) as requiring the exclusion of extrinsic impeachment evidence concerning a witness's prior instances of conduct.' United States v. McNeill, 887 F.2d 448, 453 (3d Cir.1989)." Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 147–48 (3d Cir. 2000). Given this general rule, the legal authority offered in support of the plaintiff's invitation to allow this extrinsic, impeaching proof is entirely distinguishable from the factual circumstances of this case in our view, and does not support admitting Reisinger's testimony for this purpose. Moreover, this proffered line of impeaching testimony would likely serve to confuse jurors, distract their focus from the evidence that is before them, and impose an impossibly metaphysical obligation upon jurors to accept some declarations as substantive evidence while considering other similar but hearsay declarations solely for impeachment purposes.

Accordingly, the Court agrees that on the record that has been submitted, the Borough's motions to restrict hearsay testimony about rumors and other hearsay statements concerning Candland's alleged bias against older workers should be granted.

## III.  ORDER

AND NOW, this 14th day of September 2017, upon consideration of the defendant's motions *in limine* to preclude the introduction of hearsay evidence (Docs. 73, 75.), and for the reasons set forth in the within memorandum opinion, IT IS HEREBY ORDERED THAT the motions are GRANTED.

*/S/  Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge