# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL T. KEISER,** | : | Civil No. 1:15-CV-450 |
| **Plaintiff** | : | (Magistrate Judge Carlson) |
| v. | : | |
| **THE BOROUGH OF CARLISLE,** | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION AND ORDER

### I. Factual and Procedural Background

This is a workplace age discrimination lawsuit brought by the plaintiff against a local municipality under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 ("ADEA"). The plaintiff in this action, Michael Keiser, worked for 27 years as the Director of Public Works for the Borough of Carlisle before he was fired on May 1, 2014, just hours after formally complaining to his supervisor about what he perceived as his supervisor's repeated ageist and discriminatory comments and criticism. Keiser alleges that his firing constituted unlawful age discrimination and was retaliatory.

The Borough, and Keiser's supervisor, Mathew H. Candland, Sr., maintain that Candland was compelled to terminate Keiser's employment because it had become impossible to work cooperatively with Keiser; because of fundamental

disagreements over significant public-works projects; and because morale had reached an unacceptable low within Keiser's department. Keiser retorts that these given reasons were pretextual cover for his unlawful firing.

With respect to these competing claims and defenses, we have previously concluded that this case is riddled with factual disputes that make summary judgment inappropriate. Accordingly, we have scheduled this case for trial in October 2017 and in anticipation of that trial the parties have filed an array of motions *in limine*, including a motion that the Borough has filed to exclude what it describes as "irrelevant and speculative testimony about other employees." (Doc. 83.) In this motion, the Borough requests that the Court enter an Order that would preclude the plaintiff from soliciting testimony from a number of witnesses that amounts to little more than their own, or others', subjective anxiety about their job security as they became older or were beset with deteriorating health. (Doc. 77.) The defendant also seeks to preclude a former Borough Council member, Linda Ciccolello, from offering her own speculation as to the reasons that a number of employees left the Borough. The defendant argues that the evidence is in some respects based upon rumors and other hearsay regarding Candland's alleged bias against older workers, and thus should be deemed inadmissible for the similar reasons to those set forth in a separate motion *in limine* that the Court has since granted. (Doc. 73.) The defendant also argues that the evidence is irrelevant to the

issues in this case, and even if arguably relevant would be needlessly confusing to the jury and highly prejudicial to the defense.

For his part, the plaintiff concedes that the speculation testimony that is contained in deposition testimony of Linda Ciccolello is not properly admissible, and he concedes the motion with respect to this potential evidence. He similarly concedes that testimony from Don Reisinger about a former employee, Rodney Garner's fears regarding his job security because of Matt Candland's alleged preference for younger workers is both unduly speculative and inadmissible as hearsay. However, he argues that he should be able to elicit testimony from Theodore Weber and Brian Richardson, arguing that this testimony is relevant and admissible, although he provides relatively little in the way of argument on either score. It appears that he wishes to present this evidence in order to provide support for the narrative that Candland had fomented a culture of fear and anxiety within the Public Works Department that caused older employees to become fearful that their continued employment was in jeopardy.

Based on the scant testimony that actually appears to be remaining in issue and subject to the defendant's motion *in limine*, and finding that the testimony is of questionable relevance, confusing as to the issues actually being tried, risks the potential for significant prejudice, and in some cases lacks an apparent foundation, the motion as to the specific testimony identified will be granted. The Court

recognizes that in some instances witnesses should be granted leeway to explain their state of mind, but in the case of the testimony that remains subject to this motion, it appears to rely on a foundation of rumor-based evidence and concerns that the Court has already found constitute impermissible hearsay. The evidence is also of dubious relevance, since it is little more than individual employees' expressing their own subjective worries about not only the effect of age on their future employment, but also their individual medical issues and other concerns, matters that seem unrelated to the issues being tried regarding Keiser's termination and retaliation claims.

## II. Discussion

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial

interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted).

However, courts exercise great caution before indulging in pre-trial rulings excluding evidence. Parties frequently invite courts to make pre-trial rulings on issues of prejudice, relevance and admissibility through motions *in limine*. The United States Court of Appeals for the Third Circuit has cautioned us, however, that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990); *see also Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage . . . ."). Moreover, the Third Circuit has characterized Rule 403, the rule permitting exclusion of evidence, as a "trial-oriented rule" and has warned that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." *In re Paoli R. Yard PCB Litig.*, 916 F.2d at 859. However, it is also well-settled that "[a] trial court is afforded substantial discretion when striking a . . . balance with respect to proffered evidence, and a trial judge's decision to admit or exclude evidence . . . may not be

5

reversed unless it is arbitrary and irrational." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

The issues raised by these three motions *in limine* aptly illustrate why courts should often refrain from ruling on these questions of relevance and prejudice in the abstract. At the outset, the legal principles which guide our analysis of these questions are broadly framed and are often fact-specific, requiring us to assess factual matters as they arise at trial. On this score, the Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.

Adopting this view of relevance it has been held that: "Under [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

6

than it would be without the evidence.' [Therefore] 'It follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.'" *Frank v. County of Hudson,* 924 F. Supp. 620, 626 (D.N.J.1996) *citing Spain v. Gallegos,* 26 F.3d 439, 452 (3d Cir.1994) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." *United States v. Sriyuth,* 98 F.3d 739, 745 (3d Cir.1996) (citations omitted). These principles favoring inclusion of evidence are, however, subject to some reasonable limitations. One of the most significant of these limitations is embodied in Rule 403 of the Federal Rules of Evidence, which provides grounds for exclusion of some potentially irrelevant but highly prejudicial evidence, stating that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 .

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

Turning to the motion before the Court, the Borough seeks to exclude testimony from Theodore Weber, a current employee who testified during his deposition that he had concerns about being able to maintain his employment because his "knees were getting bad" and because of rumors that "they were going to try to get rid of the older people." (Doc. 78, Ex. A, at 45-46.) Other witnesses, including Tom Hamilton and Don Reisinger offered some limited testimony that echoed the concerns that Weber had. In addition, Reisinger and Brian Richardson both offered some speculative testimony regarding the reason Rodney Garner, a former Borough employee, decided to retire in his 60s while battling cancer. The

plaintiff concedes that Reisinger's testimony would amount to inadmissible hearsay, but nevertheless argues that Richardson should be able to testify about his own speculation for Garner's separation, which seems to be that Garner was worried about his health and his age and thought that he might be a candidate for termination, though Richardson's testimony is extremely limited, is admittedly speculative and ultimately amounts to little more than a recollection that four years prior to the deposition he had "some form of conversation with he [Garner] was concerned about the fact that he had cancer and that his age that he was on the chopping block. Something along those lines." (Doc. 78, Ex. D, at 34-35.)

We agree with the Borough that this especially limited and speculative testimony lifted from short excerpts in the deposition record lacks relevance in this case because it does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. As best as the Court can tell, the evidence regarding Weber amounts to little more than his own articulated concerns over his health and its potential impact on his job, and also implicates rumors that were circulating within the Public Works Department that Candland had a preference for younger workers.[1] There is no evidence that Weber was ever,

---

[1] The Court has previously ruled that the plaintiff may not have witnesses testify about rumors and other hearsay concerning Candland's preference for younger

in fact, subject to any alleged discriminatory or retaliatory treatment, and his subjective anxiety would thus seem to have especially limited relevance to Keiser's claims. Even if the evidence could be said to have some relevance in this case, the Court agrees that under Rule 403 it would be properly excludable because its limited probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, and would otherwise be a waste of the jury's time.

The Court finds the dispute over Brian Richardson's speculative recall of the reasons why Garner separated from employment to be particularly confusing. Richardson's testimony is extremely limited in this area, and would seem to offer little substantive support for the plaintiff's case other than, perhaps, to suggest that other employees had concerns that their own health and advancing age placed their continued employment at risk. Aside from the questionable relevance, it also appears that Richardson lacks an adequate foundation regarding the reasons why Garner elected to retire, since it is not based on his own personal knowledge, and his testimony about what Garner may have told him would appear plainly to constitute hearsay under Rule 801 in that it would be offered as a statement given by an out-of-court declarant offered to prove the truth of the reasons why he left his job. Fed. R. Evid. 801(c).

---

workers and his intention to replace older employees because the testimony lacks an adequate foundation and is hearsay.

The plaintiff has already conceded that Don Reisinger would not be competent to testify about similar conversations that he had with Garner, since the testimony would be hearsay. The Court cannot perceive why Richardson's testimony would not be excluded for the same reason, and the general rule that hearsay statements are not admissible unless they are subject to an exception set forth in Rule 804 or unless another rule provides that the statement is non-hearsay. As best the Court can tell from his brief, the plaintiff's only argument on this score is that because Brian Richardson was a "manager," his deposition testimony about his own subjective recollection of a conversation he had with Rodney Garner should be deemed non-hearsay as a statement of the Borough itself. (Doc. 84, at 3.) The plaintiff has offered no legal support for this assertion, and the Court does not agree that Richardson's testimony about Garner's alleged out-of-court statements somehow become admissible simply because Richardson functions in an unspecified managerial capacity for the Borough, particularly since the testimony is not about a statement that Richardson himself made, but is about something that Rodney Garner is claimed to have said. Nothing in Rule 801(d)(2) provides for the interpretation or conclusion the plaintiff has suggested. Finally, the Court's confusion on the basis for this particular evidentiary dispute strongly suggests that the introduction of this evidence in the way the plaintiff proposes would risk confusing the fact finder at trial, and the especially limited testimony is

11

of such little probative value that it "is not worth the problems that its admission may cause." *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343 (3d Cir. 2002).

### III. Order

AND NOW, this 14th day of September 2017, for all of the foregoing reasons, IT IS HEREBY ORDERED THAT the Borough's motion to exclude certain speculative testimony of current and former employees and Linda Ciccolello as more fully described in the motion (Doc. 77.) is GRANTED.

*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge