# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL T. KEISER,** | : | Civil No. 1:15-CV-450 |
| **Plaintiff** | : | |
| | : | (Magistrate Judge Carlson) |
| v. | : | |
| **THE BOROUGH OF CARLISLE,** | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION AND ORDER

### I.   Factual and Procedural Background

This is a workplace age discrimination lawsuit brought by the plaintiff against a local municipality under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 ("ADEA"). The plaintiff in this action, Michael Keiser, worked for 27 years as the Director of Public Works for the Borough of Carlisle before he was fired on May 1, 2014, just hours after formally complaining to his supervisor about what he perceived as his supervisor's repeated ageist and discriminatory comments and criticism. Keiser alleges that his firing constituted unlawful age discrimination and was retaliatory.

The Borough, and Keiser's supervisor, Mathew H. Candland, Sr., maintain that Candland was compelled to terminate Keiser's employment because it had

1

become impossible to work cooperatively with Keiser; because of fundamental disagreements over significant public-works projects; and because morale had reached an unacceptable low within Keiser's department. Keiser retorts that these given reasons were pretextual cover for his unlawful firing.

With respect to these competing claims and defenses, we have previously concluded that this case is riddled with factual disputes that make summary judgment inappropriate. Accordingly, we have scheduled this case for trial in October 2017 and in anticipation of that trial the parties have filed an array of motions *in limine*, including a motion *in limine* filed by the defendant that seeks to exclude portions of deposition testimony from Brian Richardson, Donald Reisinger, and Linda Cecconello on the grounds that their testimony constitutes inadmissible lay opinion testimony. (Doc. 79).

In its motion and accompanying brief the defendant identified this allegedly objectionable opinion testimony in the following fashion: First, with respect to Brian Richardson, Richardson testified in his deposition that Candland was "cocky" and a "know-it-all." (Doc. 80-1, Ex. A 19-20). Asked to explain, Richardson testified that "there were things that he changed under his – it's my understanding under his direction that made our jobs harder." (Id., 19). More specifically, "[h]e made us get rid of some of the dump trucks, and he replaced them with little tiny dump trucks." (Id., 19-20). Richardson could not think of

other examples. (Id., 20). Although he was unable to speak to whether Candland might harbor an age bias, Richardson provided his impression that Candland was a person who believed things must be done his way and was not open to being challenged. (Id., 27-28).

As for Donald Reisinger, in his deposition he was asked about Candland's trustworthiness and testified that "he [Candland] didn't prove that to me." (Doc. 80-1, Ex. B. 30-31). Reisinger also testified to his impression that Candland was the "type who always thought he knew best," (Id., 33), and opined that that Candland did not have "any business poking his nose into the manner in which workers were doing the gatehouse project" and that "it probably wasn't the best use of his time." (Id., 35).

Finally, in her deposition testimony the defendant noted that former Councilmember Linda Cecconello opined that Candland had "not achieved the objective of responsibly managing the fiscal affairs of the Borough." (Doc. 80-1, Ex. C 27). Cecconello also testified to her belief that Candland was responsible for a broad and "dynamic" shift – "a slipping of morale and it just went from bad to worse in all of the departments, not just Public Works, Finance, the police station. I mean it was all departments." (Id., 36.) In addition, Cecconello also testified that she did not discuss with Candland any complaints that she received "[b]ecause he

retaliates." (Id., 41). Asked to expound, Cecconello stated that "it puts their job in jeopardy" and "he retaliates" based upon the following:

> A. I had one person say to me that if they didn't like working for him, they could leave. Everybody is like afraid to say anything. I have never seen anything like it, I really haven't. I mean, I've seen people that have concerns for their job, but they really felt if they spoke up that they were in jeopardy . . . don't recall. It may have come from Mr. Candland himself, but I don't know.
> ***
> Q. Did employees specifically tell you that they were afraid because of Candland?
>
> A. Not specifically because of Candland. In the past year Brian Richardson left. He was our traffic guy. And his words to me were I saw the writing on the wall.

(Id., 42).

In response to the Borough's motion *in limine* which sought to exclude this specific testimony as inadmissible lay opinion evidence, Keiser conceded that testimony from Cecconello regarding Candland's management of the Borough's finances was inadmissible. Keiser asserted, however, that the testimony of Richardson and Reisinger, as well as Cecconello's testimony concerning her opinion that Candland was prone to retaliate against others should be admitted at the trial of this case. (Doc. 85).

With the parties' positions framed in this manner, this motion *in limine* is ripe for resolution. For the reasons set forth below, this motion *in limine* will be GRANTED in part and DENIED in part. The motion will be granted in that we

4

will instruct the plaintiff not to solicit that testimony from Cecconello regarding Candland's management of the Borough's finances. Additionally, the plaintiff may not solicit testimony from Cecconello in which she describes Candland as someone who "retaliates." As for the cited testimony of Reisinger and Richardson, we will not exclude their testimony in a wholesale fashion as lay opinion testimony since in our view much of the testimony cited by the defense is more properly characterized as descriptions of conduct on Candland's part, rather than expressions of lay opinion. We will, however, entertain relevance objections at trial to particular and prolonged inquiry into these inter-personal matters which may have only limited relevance to the issues properly before the jury.

## II. Discussion

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to

"narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted).

However, courts exercise great caution before indulging in pre-trial rulings excluding evidence. Parties frequently invite courts to make pre-trial rulings on issues of prejudice, relevance and admissibility through motions *in limine*, such as the instant motion. The United States Court of Appeals for the Third Circuit has cautioned us, however, that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990); *see also Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage . . . ."). Moreover, the Third Circuit has characterized Rule 403, the rule permitting exclusion of evidence, as a "trial-oriented rule" and has warned that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." *In re Paoli R. Yard PCB Litig.*, 916 F.2d at 859. However, it is also well-settled that "[a] trial court is afforded substantial discretion when striking a . . . balance with respect to proffered evidence, and a trial judge's decision to

admit or exclude evidence . . . may not be reversed unless it is arbitrary and irrational." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

Legally, there are several different bases for motions *in limine*. First, such motions are filed when it is alleged that evidence is going to be offered which is improper under the Federal Rules of Evidence. In considering motions *in limine* which call upon the Court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are, therefore, reviewed only for abuse of discretion ... Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.' " *Abrams v. Lightolier Inc.* 50 F.3d 1204, 1213 (3d Cir.1995) (citations omitted); *see Bernardsville Bd. of Educ. v. J.H.,* 42 F.3d 149, 161 (3d Cir.1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court, and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of these key guiding principles is reflected in the philosophy which shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly

7

permit fact-finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

> Fed. R. Evid. 401.

Adopting this view of relevance it has been held that: "Under [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' [Therefore] 'It follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.'" *Frank v. County of Hudson,* 924 F. Supp. 620, 626 (D.N.J.1996) *citing Spain v. Gallegos,* 26 F.3d 439, 452 (3d Cir.1994) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." *United States v. Sriyuth,* 98 F.3d 739, 745 (3d Cir.1996) (citations omitted). These principles favoring inclusion of evidence are, however, subject to some reasonable limitations.

Relevant in instant motion, Rule 403 provides grounds for exclusion of some potentially irrelevant but highly prejudicial evidence, stating that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

9

However, this principle of inclusion is not unbounded and the rules of evidence recognize that certain types of evidence are particularly problematic and subject to exclusion. One area where the rules of evidence place limits upon testimony is the field of opinion testimony, and particularly lay opinion testimony. While much common discourse entails the expression of lay opinions, and it is often said that everyone is entitled to his or her own opinion, the rules of evidence recognize the fundamental wisdom of the observation attributed to Daniel Patrick Moynihan that: "Everyone is entitled to his own opinion, but not to his own facts." Therefore, the rules of evidence impose specific limits on what may be admitted as lay opinion evidence. In particular, Rule 701 of the Federal Rules of Evidence governs the admissibility of lay opinion testimony and provides that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
>
> Fed. R. Evid., Rule 701.

In order to be admitted into evidence under Rule 701 a lay opinion must satisfy all of the criteria set forth in this rule. *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225 (3d Cir. 2008). For our purposes this means that the proffered

opinion evidence must meet Rule 701's dual requirements that the evidence be both rationally based on the witness's perception and helpful to clearly understanding the witness's testimony or to determining a fact in issue. Thus, as a threshold matter any lay opinion must rest upon, " 'firsthand knowledge of the factual predicates that form the basis for the opinion.' *Gov't of V.I. v. Knight,* 989 F.2d 619, 629 (3d Cir.1993) (citing Fed.R.Evid. 701(a) advisory committee's note); *see also United States v. Glenn,* 312 F.3d 58, 67 (2d Cir.2002) ('[A] lay opinion must be rationally based on the perception of the witness. This requirement is the familiar requirement of first-hand knowledge or observation.'); *cf.* Fed.R.Evid. 602 ('A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.')." *Hirst v. Inverness Hotel Corp.,* 544 F.3d 221, 225 (3d Cir. 2008).

"Second, lay opinion testimony must be 'helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.' Fed.R.Evid. 701(b)." *Hirst v. Inverness Hotel Corp.,* 544 F.3d 221, 226 (3d Cir. 2008). On this score, it has been recognized that, " 'seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an "oath helper." ' *Mitroff v. Xomox Corp.,* 797 F.2d 271, 276 (6th Cir.1986)." *Hirst v. Inverness Hotel Corp.,* 544 F.3d 221, 226 (3d Cir. 2008).

Guided by these benchmarks we note that in employment discrimination cases courts have in the past excluded lay opinion testimony regarding whether someone's conduct was retaliatory. *See Shapour v. State of California*, No. 1:13-CV-01682-BAM, 2016 WL 726905, at *5 (E.D. Cal. Feb. 23, 2016). Likewise, courts have excluded lay opinion testimony concerning the motives and reasons for an employee's termination. *See Barnett v. PA Consulting Grp., Inc.,* 35 F. Supp. 3d 11, 21 (D.D.C. 2014). However, when ruling on evidentiary issues in this field courts have taken care to distinguish between a witness' lay opinions, and that witness' first-hand observations and perceptions. The latter may be excluded if they do not satisfy the requirements of Rule 701; the former, however, may be admitted if relevant to the issues at trial. *See Mikulan v. Allegheny Cty.,* No. CV 15-1007, 2017 WL 2374430, at *7 (W.D. Pa. May 31, 2017).

Guided by these legal tenets, we turn to consideration of the disputed testimony that is the subject of this motion *in limine*.

### A. <u>Testimony of Brian Richardson and Donald Reisinger</u>

At the outset, the defendant seeks to exclude the testimony of Richardson and Reisinger describing Candland as "cocky" and as a "know-it-all" as well as testimony regarding the declining morale in the public works department and Candland's alleged role in that deteriorating workplace morale. To the extent that the defense argues that this testimony constitutes some form of lay opinion, we

agree that these witnesses could not express opinions. However, as we view it much of this testimony is not objectionable lay opinion. Rather, it consists of the witness' first hand observations and perceptions, albeit observations expressed in an occasionally opinionated manner. To the extent that the testimony of these witnesses is presented as and based upon first-hand observations and perceptions regarding Candland's conduct, attitudes and demeanor it is not subject to exclusion under Rule 701. *See Mikulan v. Allegheny Cty.,* No. CV 15-1007, 2017 WL 2374430, at *7 (W.D. Pa. May 31, 2017).

The defense also appears to raise a relevance objection to this testimony, asserting that this testimony forays far afield from issues of age discrimination into workplace office inter-personal dynamics. We have greater concerns regarding the relevance of this evidence, to the extent that it consists of commentary second guessing Candland's competence and approach to his duties, since in this setting " '[t]he question is not whether the employer made the best or even a sound business decision; it is whether the real reason is discrimination.' *Keller,* 130 F.3d at 1109. A mere showing that the employer's decision was wrong or mistaken is insufficient because the real issue is whether discriminatory animus motivated the employer's decision, not whether the employer was wise, shrewd, prudent or competent in making the decision. *Fuentes,* 32 F.3d at 765." *Straka v. Comcast Cable*, 897 F. Supp. 2d 346, 360 (W.D. Pa. 2012).

Nonetheless, the testimony of Richardson and Reisinger would offer may have some limited relevance in this case since that testimony could have a tendency to prove that it was Candland, not Keiser, who was responsible for poor departmental morale, and thus may support plaintiff's assertion that Candland's stated justifications for terminating plaintiff were pretextual. *See Cange v. Phila. Parking Auth.*, No. 08-3480, 2010 U.S. Dist. LEXIS 8427, at *20 (E.D. Pa. Feb. 1, 2010) (indicating that evidence relating to an organization's stated reasons for terminating an employee are relevant to show that the stated reasons were pretext). Accordingly, the Court is not prepared prior to trial to rule that Richardson and Reisinger should be wholly prohibited from offering any testimony regarding their first-hand observations and perceptions of Candland's managerial style and its impact on employee morale. To the extent that the Borough has additional objections to this testimony at trial based upon relevance, prejudice or the unduly cumulative nature of this testimony, those objections may be addressed and ruled upon at that time, when the Court's decision may be more fully informed as to the relevance, prejudice, and cumulativeness of the testimony. This aspect of the Borough's motion will, therefore, be denied at this time.

**B.　Testimony of Linda Cecconello**

The defendant also seeks to exclude Cecconello's testimony as it relates to Candland's impact on departmental morale. (Doc. 80 at 8-9). For the reasons

stated above, the Court finds that limited testimony relating to Candland's impact on employee morale may have some relevance to the jury's consideration of the legal issues in this case but any testimony on this score should be presented in terms of perceptions and first-hand observations of conduct rather than expressed as lay opinions. Therefore, we will not wholly exclude this evidence but will be prepared to limit that evidence at trial in accordance with this opinion.

The Borough also seeks entry of an Order that would prohibit Cecconello from offering her opinion that age played a role in Candland's decision to seek Keiser's termination and would exclude Cecconello's opinion testimony that Candland is "a type who 'retaliates'" based on lack of foundation, relevance, and danger of prejudice. (Doc. 80 at 8). We will grant this motion and exclude this testimony. We regard Cecconello's testimony on these matters to be lay opinions, lay opinions which go to the ultimate issues to be determined by the jury. While such opinions are not categorically barred by Rule 701, we are mindful of the guidance provided by the court of appeals that " 'seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an "oath helper." ' *Mitroff v. Xomox Corp.,* 797 F.2d 271, 276 (6th Cir.1986)." *Hirst v. Inverness Hotel Corp.,* 544 F.3d 221, 226 (3d Cir. 2008).

Here, the plaintiff simply has not made the showing that would permit us to find that this lay opinion testimony is admissible. First, we find that the threshold showing that Cecconello's opinion is based upon her first-hand knowledge is entirely lacking. Indeed, when she was deposed Cecconello attested to a general lack of any first-hand knowledge regarding these matters but advanced an opinion in the absence of that first-hand knowledge. This is precisely the type of ill-informed lay opinion that Rule 701 excludes. Further, given these weaknesses in the factual underpinning for the opinions offered by this witness we conclude that this lay opinion testimony does not meet the second prong required for admission under Rule 701; that is, this testimony is not particularly helpful to the jury "since the jury's opinion is as good as the witness' and the witness turns into little more than an "oath helper." ' *Mitroff v. Xomox Corp.,* 797 F.2d 271, 276 (6th Cir.1986)." *Hirst v. Inverness Hotel Corp.,* 544 F.3d 221, 226 (3d Cir. 2008). *See, e.g., Shapour v. State of California*, No. 1:13-CV-01682-BAM, 2016 WL 726905, at \*5 (E.D. Cal. Feb. 23, 2016); *Barnett v. PA Consulting Grp., Inc.,* 35 F. Supp. 3d 11, 21 (D.D.C. 2014).

### III. Order

For the foregoing reasons, IT IS HEREBY ORDERED that the defendant's motion *in limine*, (Doc. 79), is GRANTED in part as follows: plaintiff shall be prohibited from offering testimony from Linda Cecconello regarding Mathew

16

Candland's inability to properly manage the finances of the Borough of Carlisle, and plaintiff will be prohibited from offering opinion testimony from Linda Cecconello which describes Mathew Candland as someone who "retaliates." The Court will not exclude some testimony from witnesses regarding their first-hand observations and perceptions of Candland's conduct, actions and demeanor, subject to trial objections based upon relevance, prejudice, and the unduly cumulative nature of such testimony.

So ordered this 18th day of September 2017.

>*/s/ Martin C. Carlson*
>Martin C. Carlson
>United States Magistrate Judge